722 So.2d 1030 (1998)
Viktor A. LYSOGOROV, Individually and as Administrator of the Estate of his minor children, Vera Lysogorov and Vadim Lysogorov; and Natalya Lysogorov
v.
NOVOROSYISK SHIPPING CO.; West of England Ship Owners Mutual Insurance Association; Guadalupe Gil; and DEF Insurance Company.
No. 98-CA-270.
Court of Appeal of Louisiana, Fifth Circuit.
October 28, 1998.
*1031 David B. Lawton, Terriberry, Carroll & Yancy, L.L.P., New Orleans, LA, Attorney for Defendants/Appellees.
John W. deGravelles, deGravelles, Palmintier & Holthaus, Baton Rouge, Louisiana, Attorney for Plaintiffs/Appellants.
Before GOTHARD and CANNELLA, JJ., and THOMAS C. WICKER, Jr., J. Pro Tem.
THOMAS C. WICKER, Jr., Judge Pro Tem.
This appeal arises from a suit filed on behalf of Viktor A. Lysogorov (Lysogorov), individually and as administrator of the estate of his minor children as well as Lysogorov's wife, individually, plaintiffs/appellants. Plaintiffs filed suit against Novorosyisk Shipping Co., (Novorosyisk), Guadalupe Gil (Gil) and their insurers. The trial judge granted the exception of prematurity filed by Novorosyisk and dismissed the suit against Novorosyisk and its insurer, West of England Ship Owners Mutual Insurance Association (Luxembourg), (defendant/appellees). In doing so, he concluded the plaintiffs must first utilize an out-of-court procedure established in Russia prior to filing suit.[1] Plaintiffs now appeal. We affirm.
Appellants specify the following errors on appeal:
1. The trial judge erred in failing to conclude that the trial court has subject matter jurisdiction;
2. The trial judge erred in applying the collective bargaining agreement since the agreement's alleged requirement to arbitrate the matter in Russia is procedural and should not have been applied by the court, and
3. The trial judge erred in applying the collective bargaining agreement since the contract is one of adhesion.
The plaintiffs alleged that on or about June 26, 1996 Lysogorov was a seaman and member of the crew of the M/V MARSHAL KONEV, a ship owned by Novorosyisk. On that date he was walking alongside a Louisiana highway when he was struck by a vehicle. Plaintiffs further alleged that the vehicle was driven by Gil, who after striking Lysogorov, pushed his body off the hood of her car and left the scene of the accident. Plaintiffs sued the shipowner for alleged negligence and unseaworthiness of the vessel. They claim inter alia that the vessel owner owed a duty to provide Lysogorov a safe means of transportation, to warn Lysogorov *1032 of dangers, to ensure that Lysogorov had a safe method of traveling to and from his destination, to provide Lysogorov with a safe place to work, to provide Lysogorov with safe equipment in order to make the journey, to supervise Lysogorov, and to maintain safety standards. Lysogorov claims permanent disability as a result of the accident.
The trial judge granted the exceptions of prematurity[2] filed by Novorosyisk and its insurer. In granting the exception of prematurity and dismissing the suit, the court found that the collective bargaining agreement required Lysogorov to submit his claim to Russia prior to filing suit.
At the outset we note the judgment on appeal only dismisses plaintiffs' claim against Novorosyisk and Luxembourg. Plaintiffs' claim against Gil still remains. La. Code Civ. P. Art.1915(B)(1) and (B)(2) provides:
B. (1) When a court renders a partial judgment or partial summary judgment or sustains an exception in part, as to one or more but less than all of the claims, demands, issues, theories, or parties, whether in an original demand, reconventional demand, cross-claim, third party claim, or intervention, the judgment shall not constitute a final judgment unless specifically agreed to by the parties or unless designated as a final judgment by the court after an express determination that there is no just reason for delay.
(2) In the absence of such a determination and designation, any order or decision which adjudicates fewer than all claims or the rights and liabilities of fewer than all the parties, shall not terminate the action as to any of the claims or parties and shall not constitute a final judgment for the purpose of an immediate appeal. Any such order or decision issued may be revised at any time prior to rendition of the judgment adjudicating all the claims and the rights and liabilities of all the parties.
Furthermore, the requirements set forth in article 1915(B)(1) for establishing the judgment as a final judgment have not been met. Therefore, the judgment is an interlocutory judgment. La.Code Civ. P. Art.2083(A) provides in pertinent part:
An appeal may be taken ... from an interlocutory judgment which may cause irreparable injury ...
The record clearly establishes the requisite showing of irreparable injury. The issue herein is whether the plaintiffs must use the Russian out-of-court procedure prior to filing suit.
Lysogorov signed an employment contract. He was also a member of a union which provided a collective bargaining agreement. The collective bargaining agreement states in pertinent part:
During the period for which this collective agreement is in effect, the parties are obliged to adhere to the requirements of the laws currently in effect governing the procedures for the resolution of collective and individual labor disputes ...
* * * * * *
The collective agreement was developed and prepared in accordance with the laws of the Russian Federation concerning "Collective Contracts and Agreements" and "Entrepreneurial Activities," the Labor Code of the Russian Federation, the Decree of the President of the Russian Federation on "Social Partnership and the Resolution of Labor Disputes (Conflicts) and other regulatory acts covering Labor and socio-economic relationships."
The affidavit of Vladimir Aleksandrovich Mednikov (Mednikov) was introduced. Mednikov, a deputy managing partner with the law firm "Jurinflot," averred Russian law mandates that claims for compensation of damages caused in connection with the fulfillment of labor duties first be submitted to an out-of-court procedure. After citing statutory provisions Mednikov explained:

*1033 ... it is clear that the Russian law requires that all labor disputes (including compensation) claims shall in the first instance be submitted to an out-of-court procedure. The out-of-court procedure initially is a mandatory step under RF law. The above out-of-court procedure is intrinsic and essential part of the compensation system set up to handle disputes between employers and employee. Out-of-court procedure for labor disputes is a fundamental part of the compensation systems [sic] it is the public policy of Russian Federation to expedite in an inexpensive and speedily manner the resolution of the employee/employer compensation disputes. The out-of-court procedure shall not be changed by contract [emphasis added].
Clearly, the object of the preliminary out-of-court procedure is the speedy resolution of employee/employer disputes through informal procedures. Considering these factual circumstances, a delay would defeat the purpose of such a procedure. Therefore, we consider the judgment to be an appealable judgment.
Appellants argue that the Russian out-of-court requirement does not apply because Lysogorov's employment contract contains no reference to the provision. In addition, they argue the requirement is merely "procedural" and should not be applied. Furthermore, appellants argue the out-of-court provision, if applicable, constitutes an adhesive contract.
Appellants correctly note that Lysogorov's employment contract does not incorporate any provision of the collective bargaining agreement except those provisions dealing with "working time," "time off," and "annual vacation." Lysogorov's employment contract contains the following reference to the collective bargaining agreement:
3) Working time, time off are determined by the ship master in agreement with the ship's trade union in accordance with a Collective Bargaining Agreement and the Code on wages of the Russian Federation.
4) A crew member receives annual vacation in accordance with the Collective Bargaining Agreement.
Lysogorov's deposition was introduced. He testified he is a lifelong resident of Russia. He is presently employed by Novorosyisk as a chief machinist turner. He has been employed in that capacity for approximately 20 years. He currently sails an average of six months per year. He stated he signed an employment contract with Novorosyisk before boarding the ship, M/V MARSHALL KONEV. Each time he boards a different ship for the company, he is required to sign a different contract.
On the date of the accident his ship had arrived at a port in Louisiana from Israel. On that date he worked from 8:00 A.M. until 7:00 P.M. Upon completion of his work, the boatswain checked his work and dismissed him. He took a shower, ate supper and sat on the deck. On the deck he was approached by seaman Lyubosei who suggested they go for a walk. Lysogorov was required to report to his immediate supervisor when leaving the vessel. His supervisor gave him permission to leave. Lysogorov testified he did not receive any safety instruction from either his supervisor or the company. Although there were past instances when the company provided bus transportation for onshore leave it did not do so on this occasion. Lysogorov walked ashore in the United States for the first time.
Lysogorov went ashore with Lyubosei at approximately 8:00 P.M. while it was not yet dark. At the suggestion of two other crew members Lysogorov and Lyubosei walked to a store. Lysogorov hoped to purchase souvenirs for his children.
Lysogorov testified it was his "understanding" that he should have been given a map, safety instructions to wear light-colored clothing, and safety rules for walking alongside a road. The company did not provide the crew with flashlights or with a map when going ashore. Lysogorov felt a flashlight was necessary the night of the accident. He did not ask for a flashlight because he knew it would not be given to him.
He admitted on cross examination that if he had been given a map it would have made no difference in the manner in which he *1034 walked to the store. He did not believe he was violating any safety rules at the time the accident. He was unaware of any safety rules the company failed to tell him. He thought the clothing he wore was sufficiently light colored.
At first the men walked along a levee. They then crossed the road and walked along a path leading to the store. They reached the store but found that there were no appropriate items. After leaving the store, he and Lyubosei met two other crew members. The four men walked a single file along the path. The path was close to the road. A ditch was located alongside the path. By this time it was now dark. Lysogorov was struck from behind by a car and rendered unconscious.
He testified that he had a collective bargaining agreement with the company through the mandatory Novoyarossia trade union. He stated that the trade union was obligated to provide financial aid to his family but that it had not done so. He explained that union members are elected by the workers at Novorosyisk. Although he is entitled to vote for the union representatives, he never voted. He admitted the trade union supports the interests of both the employees and the company. At present the trade union has a new leader who is not as responsive to the needs of employees. Prior to this time, the leader had been one who was responsive.
Lysogorov identified his employment contract which contained his signature. He admitted he read the collective bargaining agreement. He stated the crew was given a copy of the collective bargaining agreement. The agreement was also published in the newspaper. He testified he had filed a complaint with the union when he remained on shore leave for too long a period. At that time the union representative was successful in assisting him.
We find the case of Lejano v. Bandak, 97-0388 (La.12/12/97), 705 So.2d 158 to be dispositive of the issues raised. In Lejano, a Filipino seaman was injured in the course and scope of his employment on a ship owned by a Norwegian company. The accident occurred in international waters. Suit was filed in the Twenty-Fourth Judicial District Court. The plaintiffs obtained a writ of attachment of the ship while it was docked within the jurisdiction of the court. The defendants argued for dismissal of the action based on a forum non conveniens clause in the employment contract. The clause required the claim to be filed either in Norway or in the Philippines. The court found the clause to be enforceable.
Appellants assert that Lejano is inapposite because the clause in the instant case is not a forum selection clause. However, the Lejano court broadly defined "forum selection" and "choice-of-law" clauses as "procedural choices" at 164:
Consensual adjudicatory procedure denotes the ability of potential or prospective litigants to choose, in advance of any litigation, the court that will hear the dispute and the law that will govern the substantive merits of the litigation. It is essentially a doctrine of procedural choices by consent of the parties. These choices and this consent are typically manifested in "forumselection clauses" and "choice-of-law" clauses contained in an agreement between the parties. Although these agreements affect basic procedural rights, their interpretation is nonetheless inevitably based in contract law [citations omitted; emphasis added.]
The Lejano court explained at 166:
Because the validity and interpretation of forum selection clauses are regarded as procedural, they are generally controlled by state law. However, the United States Supreme Court has determined that in admiralty cases, federal law governs the enforceability of forum selection clauses... A contract for hire of a ship or of the officers and sailors to man her falls within admiralty jurisdiction. Mr. Lejano's employment contract with K.S. Bandak to work aboard the M/V BANDAK falls within admiralty jurisdiction. Because the employment contract falls within admiralty jurisdiction, the Supremacy Clause mandates that the body of law governing maritime law is binding on the states ... Therefore, we find that the courts of this state sitting in admiralty should examine the validity and enforceability of forum *1035 selection clauses in accordance with federal law and standards [citations omitted.]
Considering federal law, the Lejano court held at 166:
Forum selection clauses "are prima facie valid and should be enforced unless enforcement is shown by the resisting party to be unreasonable under the circumstances." The Bremen v. Zapata OffShore Co., 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972) ... A forum selection clause should control absent a strong showing that it should be set aside. The Bremen, 407 U.S. at 15, 92 S.Ct. at 1916. A contractual choice-of-forum clause should be held unenforceable if enforcement would contravene a strong public policy of the forum in which suit is brought, whether declared by statute or by judicial decision. The Bremen, 407 U.S. at 15, 92 S.Ct. at 1916 ... according to The Bremen, a forum selection clause should be enforced absent a clear showing that enforcement would be unreasonable and unjust, or that the clause is invalid for such reasons as fraud or overreaching. The Bremen, 407 U.S. at 15, 92 S.Ct. at 1916.
In this case, as in Lejano, the forum selection clause was contained in a collective bargaining agreement and the plaintiff was a represented member of the collective bargaining unit. In Lejano the forum selection clause was included in the employment contract; however, the Lejano seaman argued his employment contract was written in English, a language he did not understand. In Lejano plaintiffs argued the provision was unenforceable because Lejano was not a signatory to the clause. The Lejano court held at 167:
Mr. Lejano's claim that he did not understand the language in which it is written is of no consequence in light of the Philippine employment services' structure, the fact that the POEA [Philippine Overseas Employment Administration] acted on his behalf in negotiating and bargaining for the terms of the contract, and the fact that Mr. Lejano signed the POEA-approved contract, thereby submitting to the terms thereof, and consequently, being afforded any benefits and advantages of other provisions of the contract.
Thus, the Lejano court considered the forum selection clause contained in the collective bargaining agreement to be valid although the specific employment contract signed by the plaintiff was written in an unfamiliar language. It is clear from Lysogorov's deposition that he benefitted from being a represented member of the union which negotiated the terms of the collective bargaining agreement. Therefore, in applying the Lejano reasoning, we hold that the absence of Lysogorov's signature to a separate employment contract specifying the terms of the collective bargaining agreement is of no moment.
Appellants argue that the preliminary out-of-court requirement is "procedural" and should not be implemented by a Louisiana state court. Instead, they contend a Louisiana court should apply its own procedural rules. They argue that Louisiana has no doctrine of forum non conveniens in Jones Act or Maritime law, La.Code Civ. P. Art. 123, and that a state court should not dismiss the above action. They further rely on Miller v. American Dredging, 595 So.2d 615 (La.1992), aff'd 510 U.S. 443, 114 S.Ct. 981, 127 L.Ed.2d 285 (1994) which prohibited the dismissal of a suit on the basis of forum non conveniens. We disagree with appellants' reasoning. Lejano held that in admiralty cases the forum selection clause in a collective bargaining agreement was governed by federal law. The Lejano court held at 165:
If the forum selection clause is valid and enforceable, a transfer to either the Philippine or Norway cannot be found to be a disguised transfer on the basis of forum non conveniens.

Appellants also contend the agreement is invalid because it is a contract of adhesion since Lysogorov did sign nor directly negotiate the collective bargaining agreement. We have previously addressed the issue of signing the contract. We further conclude that although Lysogorov did not directly negotiate its terms, his interests were represented. Furthermore, plaintiffs concede that Russian law provides similar, if not identical causes of action and relief to those of American law. *1036 In applying the Lejano standard, we conclude the trial judge correctly dismissed the action since the plaintiffs failed to make a strong showing the clause should be set aside. Lejano at 166.
Accordingly, for the reasons stated, the judgment is affirmed at appellants' cost.
AFFIRMED.
NOTES
[1] The trial court previously issued a writ of attachment directed to the M/V MARSHAL KONEV. The vessel was subsequently released upon the furnishing of a Letter of Undertaking. The trial judge also ordered that the Letter of Undertaking be released.
[2] Novorosyisk filed the following exceptions: (1) insufficiency of citation and service of process, and (2) want of amicable demand. Novorosyisk and its insurer pled the following exceptions: (1) lack of personal jurisdiction, (2) improper venue, (3) lack of subject matter jurisdiction, (4) forum non conveniens, (5) contractual selection of forum, and (6) prematurity. The trial judge's reasons for judgment state the remaining exceptions were rendered moot.